IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRENTON ULLMAN, *et al.*,

    Plaintiff,

vs.                                                                                     Case No. 14-cv-843 SMV/GBW

DENCO, INC., *et al.*,

    Defendants.

## ORDER

This matter comes before me on Plaintiffs' Motion To Disqualify Holt Mynatt & Martinez, P.C. As Counsel In This Case And All Related Cases[1] (*doc. 32*). After considering the briefing (*docs. 38, 40*), and conducting a hearing on the matter, I will grant the motion.

**I.**    **FACTS**

The relevant undisputed facts[2] are as follows. Since September 30, 2013, Joelle Gonzales ("Gonzales") was Ben Furth's ("Furth") only full-time employee and paralegal. Furth is Plaintiffs' counsel in this case and the related cases. Gonzales worked extensively on this case

---

[1] (1) *Lopez v. Denco, Inc., et al.*, Case No.: 2:15-CV-00034-WPL-GBW; (2) *Delk, et al. v. Denco, Inc., et al.*, Case No.: 2:15-CV-00066-GBW-LAM; (3) *Cummings v. Denco, et al.*, Case No: 2:15-CV-00068-GBW-LAM; (4) *Lenderman v. Denco, Inc., et al.*, Case No.: 2:15-CV- 00081-CG-WPL; (5) *Woods v. Denco, Inc., et al.*, Case No.: 2:15-CV-00090-WPL-CG; (6) *Gonzales v. Denco, Inc., et al.*, Case No.: 2:15-CV-00097-SMV-WPL; (7) *Nowlin v. Denco, Inc., et al.*, Case No.: 2:15-CV-00104-SMW-CG; (8) *Smolik v. Lynden Construction, Inc*., Case No. 2:15-CV-00157; (9) *Chavez, et al. v. Denco, Inc., et al.*, Case No. 2:15-CV-00163-CG-LAM; (10) *Carver, et al. v. Denco, Inc., et al.*, Case No: 2:15-CV-00158-WPL-SMV; and (11) *Gomez v. Denco, Inc*., Case No., 2:15-CV-00157-LAM-GBW. This list gives the original case numbers. All have been since consolidated before the undersigned for pre-trial purposes. *See doc. 37*.

[2] The parties presented affidavits with their filings, made proffers at the hearing, and were given the opportunity to present evidence at the hearing. For the facts listed here, the party who did not present a given fact failed to present any evidence to dispute it.

1

and the related cases. Plaintiffs' counsel shared his mental impressions and litigation strategies with Gonzales. Gonzales had access to all the clients' files, interviewed most of the clients, worked on Plaintiffs' damage models, worked with one expert in the case, and possesses extensive information regarding Plaintiffs' legal strategies and "bottom line" settlement numbers. Consequently, Gonzales possesses significant confidential, privileged, and proprietary information regarding Plaintiffs' litigation strategy and work product in this case and the related cases.

On or about March 3, 2015, Holt, Mynatt & Martinez, P.C. ("HMM") interviewed Gonzales. Damian Martinez ("Martinez"), an attorney of record in this case and Director of HMM, met with Gonzales during the interview process. Gonzales was hired the same day with a start date of March 17, 2015. Later that day, Gonzales informed Furth of the hiring and gave her two-weeks notice. That evening, Furth called Martinez to discuss the ethical issues regarding HMM hiring Gonzales. During the call, Furth informed Martinez that Gonzales had confidential, privileged, and work product information regarding this litigation and the other related cases. Furth suggested that HMM wait until after the mediation scheduled for April 8, 2015, to begin Gonzales' employment.

On March 4, 2015, Furth, via email and phone, reached out to Martinez to discuss the matter and to reiterate his request for a delay in Gonzales' start date. Martinez indicated that he was unable to discuss the matter that day.

The following day, on March 5, 2015, Gonzales advised Furth that she had a dentist appointment and would be out of the office. When Furth requested that Gonzales provide the

name of her dentist, she refused and resigned.

That same day, HMM electronically sent Furth a letter refusing to delay hiring Ms. Gonzales. However, HMM laid out the screening mechanisms it intended to use to prevent the disclosure of any confidential information possessed by Gonzales:

1. Ms. Gonzales will be physically separated from the actual file in our office as she will be working upstairs and the file—and the attorneys handling the file—will be located downstairs.
2. The file will be housed in Mr. Fitch's office which is a locked office.
3. All file management will be handled downstairs, including mail and other documents, and will be routed directly to Mr. Fitch rather than being routed through our normal mail handling process.
4. All electronic documentation will be password-protected on our server. Ms. Gonzalez will not have access to the password.
5. There will be an office wide admonition to all employees: They will not communicate with Ms. Gonzales regarding this matter at any point in time.
6. There will be an admonition to the attorneys handling the matter not to speak openly about the case but rather to hold all conferences inside an office or in our conference room.
7. There will be an admonition to Ms. Gonzalez to avoid any conversation regarding the file whether initiated by her or by someone else.
8. Ms. Gonzales will also be admonished not to disclose any information regarding the file to anyone at HOLT MYNATT MARTÍNEZ P.C. irrespective of whether it is considered "confidential" or not.
9. We would be willing to institute a third-party notification to Mr. Briggs Cheney by Ms. Gonzales if any breach of the ethical wall occurs in any form.
10. [] Ms. Gonzales will not be allowed to work on the file or have any contact with the file whatsoever.

*Doc.* 38 at 3. The letter also advised Furth that "based upon our business need to have another legal assistant start as soon as possible we are going to move forward with the hiring and the employment of Ms. Gonzales at the earliest available time." Soon thereafter, HMM moved Gonzales' start date from March 17th to March 9th.

3

II. ANALYSIS

A. **The New Mexico Rules of Professional Conduct do not require per se disqualification of HMM for Gonzales's conflict**

There can be no argument that, if Gonzales were an attorney, HMM would have to be disqualified.³ This result is dictated by the interaction of New Mexico's conflict of interest rule, Rule 16-109, and rule of imputation, Rule 16-110. Rule 16-109(A) states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." HMM does not dispute that, were she an attorney, Gonzales' involvement in this matter on behalf of Plaintiffs would prohibit her involvement in the matter on behalf of Defendants. Given this conflict, the general rule of imputation in Rule 16-110(A) establishes that, were Gonzales an attorney, the conflict would also prevent HMM from representing Defendants.⁴ However, in cases where the conflict arrives with a newly hired attorney, an exception to the general rule exists where "(1) the newly associated lawyer has no [confidential] information [] that is material to the matter; or (2) the newly associated lawyer did not have a substantial role in the matter [and] is timely screened from any participation in the matter . . . ."

---

³ The parties do not dispute the Court's power to disqualify counsel pursuant to the motion. Indeed, "the district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *Lamb v. Pralex Corp.*, 333 F. Supp. 2d 361, 365 (D.V.I. 2004) (citing *Richardson v. Hamilton Intern. Corp.*, 469 F.2d 1382, 1385–86 (3d Cir. 1972)).

⁴ The general rule of imputation of conflicts pursuant to 16-110(A) does not apply if the "prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers of the firm." N.M. R. PROF'L CONDUCT 16-110(A). HMM does not argue that this exception applies here.

4

N.M. R. Prof'l Conduct 16-110(C).

In *Roy D. Mercer, LLC, v. Reynolds*, 292 P.3d 466 (N.M. 2012), the New Mexico Supreme Court addressed these rules and the availability of screening as a potential remedy. The Court held that the plain reading of the rules established that the hiring firm could not avoid disqualification by screening their newly hired attorney **unless** one of the two conditions of Rule 16-110(C) could be met. *Id*. at 470-71. In the instant case, HMM does not argue that Gonzales does not possess confidential information or did not have a substantial role in the matter when she worked for Plaintiffs' counsel. Thus, if she was an attorney, screening could not avoid the disqualification of HMM because of Gonzales' conflict.

But, of course, Gonzales is not an attorney. Plaintiff argues that this distinction is irrelevant given the rules governing a lawyer's responsibilities regarding non-lawyer assistants, Rules 16-503 and 20-114. Rule 16-503 states:

> With respect to a non-lawyer employed or retained by or associated with a lawyer:
> A. a partner and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
> B. a lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
> C. a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
>   (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
>   (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Rule 20-114 similarly provides that a "lawyer has an affirmative obligation to ensure that a legal assistant, paralegal or other non-lawyer support staff for whose work the lawyer is responsible does not engage in any activities which, if engaged in by the lawyer, would constitute a violation of the Rules of Professional Conduct."

Plaintiff accurately summarizes these rules as standing for the proposition that, if a lawyer cannot do something, then neither can a paralegal. Therefore, Plaintiff reasons, because HMM would be disqualified if Gonzales were a lawyer, her status as a paralegal should make no difference. However, Plaintiff's logic suffers a crucial flaw. The dispute before the Court is not focused on Gonzales' conduct – everyone agrees that Gonzales herself is prohibited from working on this matter for HMM. And because doing so would be an "activit[y] which, if engaged in by the lawyer, would constitute a violation of the Rules of Professional Conduct," HMM attorneys are responsible for ensuring Gonzales does not engage in such activity. N.M. R. PROF'L CONDUCT 20-114.[5] Rather, this dispute is about the independent conduct of HMM attorneys – specifically whether they can represent Defendants notwithstanding the prohibition against Gonzales working on the matter. In other words, is Gonzales' conflict of interest as a paralegal imputed to the entire firm?

As quoted above, imputation of conflicts is governed by Rule 16-110. By its terms, that rule imputes only the conflicts of "lawyers." *See* N.M. R. PROF'L CONDUCT 16-110 ("[w]hile lawyers are associated in a firm"; "[w]hen a lawyer becomes associated with a firm"; "the newly associated lawyer"); *see also* N.M. R. PROF'L CONDUCT 16-109 (consistently referring to

---

[5] HMM proposes to do just that through their screening proposal.

6

"lawyer"); *cf. Mercer*, 292 P.3d at 469 (premising opinion on lawyer's continuing duty of confidentiality and undivided loyalty to his clients). The comments to the rule also support this plain reading: "The rule stated in Paragraph A also does not prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a non-lawyer, such as a paralegal or legal secretary." N.M. R. PROF'L CONDUCT 16-110, Comment 4. Neither the language of Rule 16-503 nor Rule 20-114 serve to transform the word "lawyer" in Rule 16-110 into "lawyer and non-lawyer." Moreover, though Furth at times confided in Gonzales as he would another attorney, were the Court to interpret "lawyer" to include "non-lawyer" in the present case, the distinction established by the Rules would be obliterated. Not only would there be no meaningful way of confining such an interpretation to the Rules at issue in this case so that "lawyer" would not thereafter also include "non-lawyer" in other circumstances, Rules 16-503 and 20-114 would be rendered superfluous as the means for addressing non-lawyer conduct because the Rules would simply apply directly to non-lawyers as they do to lawyers. As discussed above, these rules prohibit **a lawyer** from allowing a non-lawyer to do something she could not do if she had been a lawyer. That prohibition would not be violated by permitting certain HMM attorneys to represent Defendants.

Consequently, the undersigned concludes that the per se disqualification required by Rule 16-110 as interpreted by the court in *Mercer* is inapplicable here.

### B. The New Mexico Rules of Professional Conduct require that HMM be disqualified because screening Gonzales would not be effective

Having determined that HMM is not automatically disqualified under Rule 16-110, the

next issues are (1) whether a screen is an appropriate remedy, and (2) whether a screen would be effective under the circumstances of this case. To begin, the undersigned agrees with the majority approach that screening, if effective to protect any client confidences that the non-lawyer gained from prior employment, can avoid the harsh remedy of disqualification. *See Hodge v. URFA-Sexton, LP*, 758 S.E.2d 314, 320 (Ga. 2014) (citing *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819 (II)–(III) (Tex. 2010); *Leibowitz v. Eighth Judicial Dist. Court of Nev. ex rel. Cnty. of Clark*, 78 P.3d 515, 521 (Nev. 2003); *Green v. Toledo Hosp.*, 764 N.E.2d 979(I) (Ohio 2002); *Hayes v. Cent. States Orthopedic Specialists, Inc.*, 51 P.3d 562(II) (Okla. 2002); *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 835 (Tex. 1994); *In re Complex Asbestos Litig.*, 283 Cal. Rptr. 732 (Cal. Ct. App. 1991); Restatement (Third) of the Law Governing Lawyers § 123, Comment (f) (2000); Cecile C. Edwards, Law Firm Disqualification and Nonlawyer Employees: A Proposal for a Consistent Analysis, 26 MISS. C. L. REV. 163(V) (2007); ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 88–1526 (1988)).

In fact, a screening mechanism is explicitly contemplated as a solution to this problem in New Mexico. As the Comment to Rule 16-110 explains, "The rule stated in Paragraph A also does not prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a non-lawyer, such as a paralegal or legal secretary . . . . Such persons, however, ordinarily must be screened from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the non-lawyers and the firm have a legal duty to protect." N.M. R. PROF'L CONDUCT 16-110, Comment 4. The Georgia Supreme Court has persuasively explained why screening can be appropriate

8

for dealing with non-lawyer conflicts as opposed to lawyer conflicts:

> First, nonlawyers generally have neither a financial interest in the outcome of a particular litigation nor a choice about which clients they serve, which reduces the appearance of impropriety. *See Hayes*, 51 P.3d at 567. Second, nonlawyers have different training, responsibilities, and discovery and use of confidential information compared to lawyers. *In re Complex Asbestos Litigation*, 232 Cal. App. 3d at 593. Third, as noted above, disqualification of the new firm would present a hardship to the new firm's client, such as delays, further expenses, and a loss of specialized knowledge. *Bernocchi v Forucci*, 614 S.E.2d 775 (Ga. 2005); *see also In re Columbia Valley Healthcare System, L.P.*, 320 S.W.3d at 825. Fourth, if imputation and disqualification were automatic, nonlawyers' employment mobility could be "unduly restricted." *In re Columbia Valley Healthcare System, L.P.*, 320 S.W.3d at 825. . . Fifth, our Rules recognize that screening is effective at protecting a client's confidences.

*Hodge*, 758 S.E.2d at 319-320.

However, for screening to avoid the necessity of disqualification, it must be effective. *See* ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 88–1526, at 2 (1988) ("the new firm will be disqualified where . . . screening would be ineffective"). The obligation to effectively screen the new non-lawyer employee arises from the attorney's responsibility to ensure that the non-lawyer does not "engage in any activities which, if engaged in by the lawyer, would constitute a violation of the Rules of Professional Conduct." N.M. R. PROF'L CONDUCT 20-114; *see also* N.M. R. PROF'L CONDUCT 16-503.

It is undisputed that Gonzales acquired confidential information about Plaintiffs' case. Were she an attorney, the disclosure of any such information would constitute a violation. Therefore, "[o]nce a district court determines that a non-lawyer employee acquired confidential information about a former client, the district court should grant a motion for disqualification unless the district court determines that the screening is sufficient to safeguard

9

the former client from disclosure of the confidential information." *Leibowitz*, 78 P.3d at 522.

When considering the sufficiency of a screen in a particular case, the "court is faced with the delicate task of balancing competing interests," such as:

> (1) the individual right to be represented by counsel of one's choice, (2) each party's right to be free from the risk of even inadvertent disclosure of confidential information, (3) the public's interest in the scrupulous administration of justice, and (4) the prejudices that will inure to the parties as a result of the district court's decision.

*Id*.

In the instant case, a review of the competing interests calls for a particularly strict assessment of the proposed screening mechanisms. First, there is no doubt that that right to be represented by counsel of one's choice is important and Defendant's right would be detrimentally impacted by disqualification of HMM. However, that interest is less weighty here where (i) the case is early in the process, (ii) the primary Defendant is a corporation, and (iii) Defendants have presented no evidence of a long attorney-client relationship with HMM. *See, e.g., Pulsecard, Inc. v. Discover Card Servs.*, Civ. A. No. 94–2304–EEO, 1994 WL 749082, at *7 (D. Kan. Dec. 29, 1994) ("The prejudice to defendants in granting plaintiff's motion to disqualify is minimal. This case is still in the very early stages of litigation."). Second, the risk of inadvertent disclosure is at its apex in a case such as the instant one. The confidential information possessed by Gonzales involves bottom-line strategic approaches and positions for numerous cases, and could be disclosed in mere seconds verbally. Third, the circumstances surrounding Gonzales' hiring just prior to the scheduled mediation could trouble members of the public about its impact on the scrupulous administration of justice in this case. Fourth, the

10

potential prejudice to Plaintiffs appears to exceed the potential prejudice to Defendants. With respect to Plaintiffs, disclosure of the confidential information possessed by Gonzales could dramatically and irrevocably impact the resolution of the case. With respect to the Defendants, disqualification will prejudice them by removing their counsel of choice. However, as discussed above, this prejudice is less pronounced here.

With this balance of interests in mind, I will turn to the question of whether the proposed screening will be effective in this case. Though courts disagree on which side bears the burden of demonstrating that screening can be effective, given the balance of interests outlined above, I find that it appropriately falls on the hiring firm – HMM. *See Lamb v. Pralex Corp.*, 333 F. Supp. 2d 361, 365 (D.V.I. 2004); *Hodge*, 758 S.E.2d at 322; *In re Bell Helicopter*, 87 S.W.3d 139, 147-48 (Tex. Ct. App. 2002); *Hayes v. Cent. States Orthopedic Specialists, Inc.*, 51 P.3d 562, 570 (Okla. 2002); *In re Complex Asbestos Litigation*, 232 Cal.App.3d at 597-99. *But see Rivera v. Chicago Pneumatic Tool Co.*, 1991 WL 151892, at *6 (Sup. Ct. Conn. 1991) (unpublished). Certain relevant factors have been identified by other courts to determine the effectiveness of a screen, including:

> (1) the substantiality of the relationship between the former and current matters, (2) the time elapsed between the matters, (3) the size of the firm, (4) the number of individuals presumed to have confidential information, (5) the nature of their involvement in the former matter, (6) the timing and features of any measures taken to reduce the danger of disclosure, and (7) whether the old firm and the new firm represent adverse parties in the same proceeding, rather than in different proceedings because inadvertent disclosure by the non-lawyer employee is more likely in the former situation.

*Liebowitz*, 78 P.2d at 522.

Finally, the effectiveness of the screen should not only be judged on its prevention of actual disclosures, but also in counteracting the appearance that client confidences are at risk. As the New Mexico Supreme Court has explained when addressing imputation of conflicts under Rule 16–110(C):

> The [legal] profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar." N.M. R. of Prof'l Conduct pmbl. In enforcing the prohibition contained in Rule 16–110(C), the Court is acting to preserve the public trust in the role of a lawyer. To allow an attorney to change sides in litigation would be contrary to the public's expectation of undivided loyalty. *See Almanza*, 1996–NMCA–013, ¶ 4, 121 N.M. 300, 910 P.2d 934 ("The client is entitled to the undivided loyalty of the attorney."). It is also contrary to the spirit of our Rules of Professional Conduct and traditional notions of fairness.

*Mercer*, 292 P.3d at 476.

The first factor weighs heavily against a finding of effectiveness. The matter on which HMM (with Gonzales as their screened employee) seeks to represent Defendants is the same matter on which Gonzales worked while with Plaintiffs' counsel. Similarly, the second factor weighs heavily against effectiveness. No time has elapsed between the matters because they are identical. In fact, less than a week transpired between the end of Gonzales' employment with Plaintiffs' counsel and her first day with HMM. The third factor also weighs against a finding of effectiveness. HMM is a relatively small firm comprised of nine attorneys, three of which are in a "senior" status. *See* HOLT MYNATT MARTINEZ P.C., *Meet the Attorneys*, http://www.hbm-law.com/meet-the-attorneys/ (last visited Apr. 20, 2015). Three of the non-senior attorneys have entered their appearance in the instant case. Moreover, all attorneys and support staff for HMM work in the same building. *See, e.g., Cheng v. GAF Corp.*, 631 F.2d 1052

(2d Cir. 1980), judgment vacated on other grounds, 450 U.S. 903 (1981); *Van Jackson v. Check 'N Go of Ill., Inc.*, 114 F. Supp. 2d 731, 733 (N.D. Ill. 2000); *Marshall v. New York Div. of State Police*, 952 F. Supp. 103, 112 (N.D.N.Y. 1997).  HMM's small size is highlighted by the fact that it needed Gonzales to start as soon as possible rather than being able to wait just over three weeks until after the scheduled mediation.

The fourth factor weighs in favor of an effectiveness finding.  Only one person – Gonzales – possesses the confidential information and needs to be screened.  The fifth factor weighs strongly against an effectiveness finding.  It is undisputed that Gonzales was heavily involved in the matter, both quantitatively and qualitatively, when she was employed by Plaintiffs' counsel.  She worked extensively on the case, was involved in interviews of Plaintiffs, participated in litigation and settlement strategy meetings with Furth, and knows Plaintiffs' "bottom line" settlement numbers.  The sixth factor is evenly balanced.  The proposed screening rules are comprehensive.  Indeed they mirror and, sometimes exceed, screens approved in other cases.  *See, e.g., Lamb*, 333 F. Supp. 2d at 366; *Hodge*, 758 S.E.2d at 323.  On the other hand, the confidential information possessed by Gonzales is particularly sensitive and susceptible to disclosure given how easily and quickly it could be revealed.[6]  Moreover, the

---

[6] Notwithstanding HMM's screening mechanisms, the primary onus for keeping the confidences of Plaintiffs will fall on Gonzales.  This unavoidable reality gives the undersigned pause.  Gonzales' departure from Furth's employment was less than cordial and at least appeared to involve some dissembling on her part.  *See doc. 32*, Exs. 4, 7.  Moreover, as a brand new employee at HMM, she may feel the misguided need to prove her value to her new employer by disclosing the valuable information she possesses.  *See Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037, 1043 (W.D. Mo. 1984) ("In fact, a persuasive argument can be made that a non-lawyer would be more likely to reveal confidential information. Presumably, an attorney would be acutely aware of his or her ethical obligation not to reveal confidences of a former client. A non-lawyer might not be as sensitive to the need to safeguard the confidences of his or her previous employer gained while working with an attorney.").  While I am confident that HMM would immediately alert the Court to any such disclosure, the damage would be done.

Court notes the gap, albeit short, between the implementation of the screening procedures and HMM's contact with Gonzales. The seventh factor weighs heavily against a finding of effectiveness. Plaintiffs' counsel and HMM represent adverse parties in the same proceeding, rather than in different proceedings, making inadvertent disclosure by Gonzales significantly more likely.

Considering the factors as a whole, and the balance of interests the factors represent, I conclude that Defendants have failed to meet the burden of proving that the screen will be effective.

### III. CONCLUSION

For the foregoing reasons, I conclude that HMM must be disqualified from representing Defendants in this and the related cases, and barred from having any role in the cases going forward. Nonetheless, I find no basis for, and hereby deny, Plaintiffs' request for an award of fees and costs. With that exception, I will grant Plaintiffs' motion effective 14 days from the date of this order. Within 14 days, Defendants shall either: (1) file an appeal of this decision to the presiding judge pursuant to Title 28 U.S.C. § 636(b)(1)(A),[7] or (2) cause new counsel to file an entry of appearance.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
United States Magistrate Judge

---

Disqualification would certainly be necessary at that point and would cause far more prejudice to Defendants by requiring them to obtain new counsel much deeper into the case.

[7] Should Defendants appeal, the disqualification would of course not be effective until after the ruling of the presiding judge.